UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>FELIX NKANSAH,<br><br>        Petitioner. | 08-CR-1234(JSR)<br><br>MEMORANDUM ORDER |

JED S. RAKOFF, U.S.D.J.:

    Before the Court is a petition for a writ of error *coram nobis* filed by *pro se* petitioner Felix Nkansah, in which he seeks to vacate his 2010 conviction or obtain a new trial based on newly discovered evidence. In the alternative, Nkansah requests a hearing to determine whether *coram nobis* relief should be granted.

    Nkansah's principal argument is that his conviction was the result of prosecutorial misconduct and the knowing use of false evidence at trial. The petition is based upon an affidavit and an audio recording from his co-defendant, David Dosoo, recanting all the testimony Dosoo provided as a Government Cooperator at Nkansah's trial and claiming that he was coerced by the prosecutor to provide false testimony. While Nkansah is no longer incarcerated, he claims that he continues to suffer legal consequences, including the threat of deportation, as a result of his conviction.

    For the reasons explained below, the Court denies the petition in its entirety.

1

I.  **Factual and Procedural Background**

In 2010, petitioner Felix Nkansah was found guilty by a jury of conspiracy to defraud the Internal Revenue Service ("IRS"), in violation of 18 U.S.C. § 286 (Count 1); filing false claims with the IRS, in violation of 18 U.S.C. § 287 (Count 2); bank fraud, in violation of 18 U.S.C. § 1344 (Count 3); aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5) (Count 4); and possession of means of identification of another person, in violation of 18 U.S.C. §§ 1028(a)(7), b(1) (Count 5). On direct appeal, the Court of Appeals vacated Nkansah's bank fraud conviction (Count 3), which in turn resulted in the vacatur of his aggravated identity theft conviction (Count 4), which was predicated on the bank fraud conviction. The Court of Appeals affirmed the remaining counts. *See United States v. Nkansah*, 699 F.3d 743 (2d Cir. 2012).

Between early 2005 through August 2008, a sophisticated identity-theft ring operated in the Bronx, New York. Trial Transcript ("Tr.") 183-85. About ten people, including Nkansah, participated in this identity theft scheme. *Id.* at 163-64, 183. Nkansah and his co-conspirators used stolen identities to file fraudulent tax returns with the IRS in an effort to obtain refund checks or direct bank deposits totaling millions of dollars. *Id.* at 183-85, 193.

Prior to his trial, Nkansah fled the United States to escape prosecution and was found in Calgary, Canada. Nkansah was subsequently returned to New York for his trial. Tr. 282.

At Nkansah's trial, the Government offered the testimony of 14 witnesses, including David Dosoo, Nkansah's co-defendant. Dosoo testified pursuant to a cooperation agreement. The Government presented an abundance of physical evidence indicating Nkansah's personal involvement in the fraud scheme, including bank records with Nkansah's name and address and dozens of fraudulent tax returns traced to an IP address at Nkansah's residence. Tr. 49-50, 321-22, 333, 344, 373; GX 201-02, 501, 601. The Government also presented physical evidence recovered from Nkansah's home, including a folder containing approximately 100 sheets of identity information with names and social security numbers (Tr. 52-57; GX 1), receipts for thousands of dollars in money transfers to Ghana (Tr. 64-65; GX 11), and a laptop containing a partially completed federal income tax return in the name of someone else. Tr. 77-79, 268-69; GX 17.

The Government presented testimony of co-defendant Dosoo to confirm the physical evidence of Nkansah's involvement. Dosoo testified at trial that Nkansah was a member of an identity theft ring, that Nkansah provided him with approximately 75 identities, and that Nkansah provided stolen identities to other co-conspirators. Tr. 155-61, 175, 182-83. Dosoo testified that he received stolen personal identity information, such as names and social security numbers, from Nkansah. *Id*. Dosoo further testified that he and Nkansah agreed to share equally any money received from the filing of fraudulent returns. *Id*. at 160-61. Finally, Dosoo testified that although he had entered a cooperation agreement with the Government, he had not been promised

a reduced sentence and had not been promised a Section 5K1 letter from the Government. *Id.* at 194-95. The jury convicted Nkansah on all counts.

One month after his conviction, Nkansah, although represented by counsel, filed a *pro se* Motion for Judgment of Acquittal or New Trial. Dkt. No. 64. Nkansah claimed that (1) the jury's verdict was not supported by sufficient evidence because the Government knowingly introduced perjured testimony from two witnesses and that (2) certain extrinsic materials not admitted into evidence at trial were left in the jury room during jury deliberations, thus violating his constitutional rights. The Court denied his motion and upheld his conviction, concluding that (1) Nkansah had not met his burden in showing that there was insufficient evidence to support his conviction and that (2) the extrinsic evidence left in the jury room was immaterial and thus not prejudicial. Dkt. No. 70. Nkansah then filed a second *pro se* motion alleging ineffective assistance of counsel. Dkt. No. 71. The Court denied the motion on procedural grounds but noted that if it were to consider the motion on the merits, the Court "would find them frivolous on their face." Dkt. No. 73.

In June 2010, the Court sentenced Nkansah to 75 months' imprisonment (which by that time was approximately 39 months' imprisonment), six months below the sentencing guidelines advisory range. On direct appeal, the Court of Appeals vacated Nkansah's bank fraud conviction, resulting in the vacatur of his aggravated identity theft conviction. The Court of Appeals affirmed the remainder of the

4

judgment and remanded the case for resentencing. *See United States v. Nkansah*, 699 F.3d 743 (2d. Cir. 2012).

In January 2013, on remand, this Court resentenced Nkansah to time served, reimposed a three-year term of supervised release, and ordered payment of restitution and a special assessment. Dkt. No. 93.

That same month, Nkansah filed a second notice of appeal. Dkt. No. 97. In August 2013, Nkansah's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating there were no non-frivolous issues to be raised on appeal, and moved for permission to withdraw. The Government concurred and cross-moved for summary affirmance. Dkt. No. 106. Nkansah opposed the Government's motion, alleging prosecutorial misconduct and insufficient evidence. In March 2014, the Court of Appeals granted counsel's motion to withdraw and summarily affirmed Nkansah's conviction. Dkt. No. 77.

In June 2015, Nkansah moved to vacate his conviction pursuant to 28 U.S.C. § 2255, or, in the alternative, to grant him a new trial. Dkt. No. 108. Nkansah raised 12 grounds for relief, including insufficient evidence, the Government's knowing introduction of false testimony from David Dosoo, and ineffective assistance of counsel. *Id*. In August 2015, Nkansah requested that, in the event his motion was improper, it be construed as a *coram nobis* petition. Dkt. No. 113.

In December 2015, Magistrate Judge James K. Cott issued a detailed report and recommendation concerning Nkansah's Section 2255 petition. Dkt. No. 115. Judge Cott concluded that because Nkansah was on supervised release at the time of his Section 2255 motion and was

5

therefore still in "custody," the Court's jurisdiction over the motion was proper. But Judge Cott rejected all 12 of Nkansah's claims for relief because they were either procedurally barred or lacked merit.[1] In June 2016, following *de novo* review, this Court adopted Judge Cott's report and recommendation. Dkt. No. 117; Case No. 15 Civ. 5100, Dkt. No. 25.

On November 21, 2023, Nkansah filed the instant motion for a writ of error *coram nobis*, seeking to vacate his 2010 conviction or obtain a new trial based on newly discovered evidence. In the alternative, Nkansah requested a hearing to determine whether *coram nobis* relief should be granted.

In support of his motion for a writ of error *coram nobis*, Nkansah attached an affidavit and audio recording from David Dosoo, in which Dosoo recants all of his testimony from Nkansah's trial. Dkt. No. 118, Ex. B. In the affidavit, which was sworn in Ghana, Dosoo asserts that "[i]n or around 2010, I David Dosoo falsely testify (sic) against Mr. Felix Nkansah at his trial." *Id*. Dosoo claims he was "forced and promised to [falsely testify] in an exchange for [his] freedom." *Id*. Dosoo also implicates his attorney Richard Bruce Lind, Esq., who allegedly was with Dosoo when Dosoo was "promised" freedom in exchange

---

[1] All of Nkansah's claims were procedurally barred except for his ineffective assistance of counsel claims, which failed to satisfy the standard for ineffective assistance of counsel set forth under *Strickland v. Washington*, 466 U.S. 688 (1984). *See* Dkt. No. 115.

for giving false testimony. *Id*. No declaration or other evidence from Lind was submitted to corroborate this claim.

In addition to the sworn affidavit, Dosoo provided a supplementary audio recording and states that this audio recording was the truth. *Id*. Dosoo's voice recording is three-minutes long and contains many sweeping statements, including that Dosoo "did not conspire" with Nkansah, "did not give [Nkansah] any checks or money," and "did not receive money from [Nkansah]." Dosoo emphatically concludes, "Everything I said about [petitioner] were [sic] all false, all false."

## II. Legal Standard

A writ of error *coram nobis* is "essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or . . . a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89-90 (2d Cir. 1998) (per curiam). Courts in this Circuit and elsewhere have long recognized an interest in the finality of criminal judgments. The writ of error *coram nobis* is in tension with this interest, and thus has been carefully limited. *See, e.g.*, *United States v. Denedo*, 556 U.S. 904, 916 (2009) ("[J]udgment finality is not to be lightly cast aside; and courts must be cautious so that the extraordinary remedy of *coram nobis* issues only in extreme cases."); *Foont v. United States*, 93 F.3d 76, 78-79 (2d Cir. 1996)(noting that "relief under the writ is strictly limited" to correct only "errors ... of the most fundamental character" when those errors have significant and ongoing consequences for the defendant).

7

A petitioner seeking *coram nobis* relief must demonstrate that "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Fleming*, 146 F.3d at 90 (quoting *Foont*, 93 F.3d at 79). "The burden is a heavy one because a court reviewing a petition for *coram nobis* relief 'must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner.'" *United States v. Rutigliano*, 887 F.3d 98, 108 (2d Cir. 2018) (quoting *United States v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000)). Notably, "[c]laims of new evidence ... without constitutional or jurisdictional error in the underlying proceeding, cannot support a *coram nobis* claim." *Du Purton v. United States*, 891 F.3d 437 (2d Cir. 2018) (quoting *Foont*, 93 F.3d at 80).

One type of constitutional error that can support a *coram nobis* claim is prosecutorial misconduct. Where a petitioner seeks collateral relief based on a claim that the prosecution used false testimony, the petitioner must prove that, "(1) false testimony was introduced; (2) the prosecutor knew or should have known that the testimony was false; (3) the false testimony went uncorrected; and (4) there was a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Calderon v. Keane*, 115 Fed. App'x 455, 457 (2d Cir. 2004) (citing *Shih Wei Su v. Filion*, 335 F.3d 119, 127 (2d Cir. 2003)). "If, however, the government is not shown to have been aware of the perjury, a new trial is warranted only if (1) the testimony was

8

material, and (2) the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *Conteh v. United States*, 226 F. Supp. 2d 514, 519-20 (S.D.N.Y. 2002) (quotation omitted).

### III. Discussion

Nkansah argues that Dosoo's affidavit and audio recording are sufficient to warrant *coram nobis* relief. However, as explained below, Nkansah fails to prove that (1) false testimony from Dosoo was introduced, (2) the prosecutor knew or should have known that Dosoo's testimony was false, or (3) there was a reasonable likelihood that Dosoo's testimony could have affected the judgment of the jury. Each of these deficiencies is independently sufficient to deny his petition.

#### A. Falsity of Trial Testimony

As an initial matter, to prevail on the merits for *coram nobis* relief, the petitioner must establish that the testimony at question was, in fact, perjurious. *See e.g., United States v. White*, 972 F.2d 16, 20 (2d Cir. 1992) ("[W]hen the newly discovered evidence focuses on the perjury of a witness, a threshold inquiry is whether the evidence demonstrates that the witness in fact committed perjury.") (citation omitted); *see also Weichert v. United States*, 458 F. Supp. 2d 57, 65-66 (N.D.N.Y. 2006) (denying *coram nobis* application in part because the petitioner failed to establish that the testimony in question was perjurious and that the prosecutor "was aware that such witness would provide trial testimony that was anything other than truthful") *aff'd*, 274 App'x 46 (2d Cir. 2008).

9

"It is axiomatic that witness recantations must be looked upon with the utmost suspicion." *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007) (quotation omitted). "As with any witness testimony, the court evaluates recanted testimony in light of ... the other evidence, considering the potential motives to be untruthful that the witness may possess, corroboration or the lack thereof, internal consistency, and the inferences of assumptions that crediting particularly testimony would require." *Jimenez v. Lilley*, No. 16 Civ 8545 (AJN) (JCF), 2017 WL 4535946, at *12 (S.D.N.Y. Oct. 10, 2017), *report and recommendation adopted*, 2018 WL 2768644 (S.D.N.Y. June 7, 2018) (quotation omitted).

Nkansah fails to prove that Dosoo's testimony at trial was false and perjurious. The sole evidence offered to prove this is Dosoo's affidavit and accompanying audio recording. Dosoo's one-page affidavit is conclusory, vague, and unpersuasive. *See* Dkt. No. 118. The affidavit states only that Dosoo "falsely testif[ied]" against Nkansah; however, Dosoo's affidavit fails to provide any specificity regarding which aspects of his testimony were false. *Id*. According to the three-minute audio recording provided as a supplement to his one-page affidavit, Dosoo claims, he "did not conspire" with petitioner, he "did not give [petitioner] any checks or money," he "did not receive money from" petitioner, and "[e]verything I said about [petitioner] were [sic] all false, all false."

This sweeping recantation is nondescript and thus unpersuasive. Dosoo's claim that his testimony was "all false" is overly broad and

10

simply implausible. At trial, Dosoo testified as to how he met Nkansah, the personal identifying information he received from Nkansah, the method of filing false tax returns by members of the identity theft ring, his discussions with Nkansah about the best banks to use to deposit tax return funds, among other information. Tr. 160, 175-76, 188-89, 213, 220-21, 230. It is not credible that "everything" Dosoo said at trial was made up as part of a scheme concocted by the prosecutors. *See Murray v. United States*, 704 F.3d 23, 33 (1st Cir. 2013) (denying *coram nobis* application, in part, because the petition was based on the "thoroughly improbable theory that the FBI agents lied about everything in [the petitioner's] case" and not just about how they knew about a specific location relevant in the petitioner's case). Indeed, Dosoo's recantation is so sweeping that he apparently does not even recall what he testified to at trial. For example, in the audio recording he claims he "didn't receive any checks or money from Mr. Nkansah," even though Dosoo never testified at trial that Nkansah provided him any checks or cash.

Dosoo's sweeping recantation not only lacks any corroboration, but also conflicts with the substantial evidence presented by the Government at trial. As described in more detail *infra* Section III.C, this included physical evidence and other testimony directly linking petitioner to numerous instances of tax fraud and identity theft. This evidence not only shows Dosoo's testimony was unnecessary to sustain the jury's verdict, but also that Dosoo's recantation is not credible. All of this physical evidence is consistent with Dosoo's trial

testimony, and undermines Dosoo's claim in the audio recording that petitioner had no involvement in tax fraud or identity theft.

Further, undermining the credibility of Dosoo's recantation is the fact that he is not currently located in the United States. The affidavit was executed by the "Commissioner for Oaths in Madina, Ghana," and Dosoo is apparently beyond the Court's subpoena power. Dkt. No. 118, Ex. B. The threat of a perjury prosecution against Dosoo is highly remote, and it is not possible to cross-examine Dosoo to test the veracity of his claim.

## B. Government's Knowledge

Next, Nkansah fails to prove that the prosecutor knew or should have known that Dosoo's testimony was false (even assuming *arguendo* that it was). Dosoo claims he falsely testified against Nkansah because he was forced to do so in "exchange for [his] freedom." Dkt. No. 118, Ex. B. He claims in the recording that the "prosecutor and the agents met with [him] and [his] lawyer and told [him] to say all that [he] said about Mr. Nkansah." *Id*. Dosoo identifies his trial attorney, Richard Bruce Lind, as a witness to this supposed coercion. However, Dosoo fails to attach any statement by Lind corroborating his recantation, casting further doubt on this claim. *Id*.

Neither Dosoo nor Nkansah submit anything apart from this affidavit and the three-minute audio recording to support the existence of this sweeping conspiracy to induce Dosoo to commit perjury. To the contrary, at trial, Dosoo testified that he had neither been promised a reduced sentenced nor a Section 5k1 letter by the Government. In

light of this testimony, made under oath, and the substantial documentary evidence supporting petitioner's guilt, the prosecutor would have had no reason to believe Dosoo's testimony was false, even assuming it in fact was.

### C. Effect on the Outcome

Finally, Nkansah fails to prove that there was a reasonable likelihood that Dosoo's testimony could have affected the judgment of the jury. Dosoo's testimony was one of *fourteen* witnesses the Government presented at trial. Even if *some* of Dosoo's recantation were true, there is abundant evidence adduced at trial supporting Nkansah's conviction independent of Dosoo's testimony. For example, there was testimony linking Nkansah's IP address with numerous fraudulent tax returns, Tr. 131, and records from three bank accounts demonstrating that Nkansah had received stolen tax refunds, Tr. 119, 398, 562. Moreover, there was physical evidence recovered from Nkansah's home implicating him in the identity theft ring. This included hundreds of pages of personal identifying information, Tr. 52-57, 67-74; GX 1; GX-14-15, tax refund correspondence or related materials from the IRS addressed to individuals who were not found to be living at petitioner's home, Tr. 63-64, 67-74; GX 10; GX 14-15, and a laptop that contained a partially completed tax return in the name of "Noel Figueroa," Tr. 77-79, 268-69; GX 17. The evidence introduced at trial also included physical evidence seized from the petitioner's vehicle, which included more personal identifying information, Tr. 83-87; GX 2-3, and a United States Treasury check made out to the

petitioner at his residential address, Tr. 91-92; GX 13. In light of this very substantial evidence, petitioner has not shown there is reasonable likelihood that Dosoo's testimony (assuming it was false) could have affected the judgment of the jury.

## IV. Conclusion

In sum, no circumstances compel granting the extraordinary remedy of a writ of *coram nobis*. Because petitioner has failed to meet his burden with respect to the first prong of the test, the Court hereby denies his petition. Further, because there is no indication Dosoo could be summoned to testify, and in light of the substantial evidence of petitioner's guilt, the Court finds a further evidentiary hearing regarding the petition is not warranted. The Clerk of the Court is therefore directed to close Docket Entry 118 in the above-captioned case.

SO ORDERED.

New York, NY
July 3, 2024

_____
JED S. RAKOFF, U.S.D.J.

14